## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### PADUCAH DIVISION
### CASE NO. 5:07-cv-00206-R

ANTHONY LANE                                                                                        PLAINTIFF

v.

BREMNER FOOD GROUP, INC.                                                           DEFENDANT

### MEMORANDUM OPINION & ORDER

This matter comes before the Court upon Defendant's Motion for Summary Judgment

(DN 33).  Plaintiff has responded (DN 39), and Defendant has replied (DN 45).  This matter is

now ripe for adjudication.  For the reasons that follow, Defendant's Motion is GRANTED IN

PART and DENIED IN PART.

### BACKGROUND

This matter arises out of the Defendant Bremner Food Group, Inc.'s ("Bremner")

termination of Plaintiff Anthony Lane.  Bremner, located in Princeton, Kentucky, is a

manufacturer and supplier of cookies and crackers.  Lane began working at Bremner on March 9,

1993.  On January 20, 2005, Lane injured his back at work.  At that time, he worked in

maintenance as a belt tech, lifting anywhere between 20 and 300 pounds.

Following his injury, on January 24, 2005, Lane underwent a back surgery performed by

Dr. Vaughan Allen.  After the surgery Dr. Allen placed Lane on full medical restrictions.  These

medical restrictions were changed after an appointment on March 8, 2005, at which point Dr.

Allen limited Lane to light duty work that prohibited him from lifting more than ten pounds and

from engaging in any repetitive bending.  Immediately after this appointment, however, Lane

experienced a relapse and on March 11, 2005, Dr. Allen temporarily restricted Lane from

working altogether.

On April 13, 2005, Lane underwent a second back surgery, after which he was placed on full medical restrictions.  About a month later, on May 23, 2005, Dr. Allen again limited Lane to light duty work.  On October 21, 2005, Dr. Allen concluded that Lane had reached maximum medical improvement.  He issued permanent restrictions which prohibited Lane from lifting more than fifty pounds, repetitive lifting more than thirty pounds, and repetitive bending.  Based on these permanent restrictions, Lane could no longer perform his prior duties as a belt tech.

On November 23, 2005, Lane underwent knee surgery.  The events leading up to this surgery are in dispute.  Lane states that he contacted Cory Davis, Bremner's Safety Manager, and Alice Clark, Bremner's Human Resources Manager, several times each week from October 25, 2005, when he was released by Dr. Allen, until his knee surgery.  He states that they told him they were trying to figure out where to put him, and so he scheduled his knee surgery per their suggestion in the interim.  He claims that he told them that his knee was not currently a problem and the surgery could be put off indefinitely.  Bremner states that on November 1, 2005, Lane met with his knee doctor, Dr. Kurt Spindler, and scheduled the knee surgery.  Then, the following day, Lane's wife faxed the FMLA certification form relating to the knee surgery to Bremner.  Bremner states that not until November 4, three days after Lane scheduled the knee surgery, were they informed of the permanent restrictions imposed by Dr. Allen.

On January 9, 2006, Dr. Spindler released Lane to return to work.  Bremner states that at this time it began the process of reinstating Lane.  That day, Lane met with Clark, Paul Miller, Bremner's Safety Manager, and Edward Drake, the head of Engineering and Maintenance at Bremner.  At that time, Clark discussed with Lane the job description for the D-line Jones machine operator.  Miller faxed Dr. Allen a letter, describing the lifting requirements of a D-line

2

Jones machine operator.  Dr. Allen responded that Lane would be unable to life the amount required by that position.

On January 12, 2006, Lane attended a second meeting at Bremner with Clark, Miller and another manager Steve Early, regarding a different position, a D-line utility position.  Miller sent a second letter to Dr. Allen describing the requirements of the position, and Dr. Allen responded that Lane could perform the required duties.  On January 19, Miller sent a third letter to Dr. Allen requesting clarification on Lane's restrictions and asking him to review the restrictions of the D-line utility position again.  Dr. Allen's office responded on January 31, refusing to elaborate on his prior note indicating Lane could perform the duties required by the D-line utility position.  Notwithstanding this refusal, on February 21, 2006, Dr. Allen sent a new copy of Lane's work restrictions to Lane's wife.  These restrictions included an additional prohibition against pushing and pulling fifty pounds at any time and over thirty pounds repetitively.

On March 6, 2006, Lane reported to Bremner to work in a D-line utility relief position, which differed from the D-line utility position.  In that position, Lane was required to relieve the caser operator for up to forty-five minutes at a time.  The caser operator job entailed twisting and bending.  Consequently, the D-line utility relief position caused Lane tremendous pain, and he reported to Bremner that it went against his restrictions.  On March 23, Dr. Allen "reiterated" that Lane's restrictions included a prohibition against repetitive bending or twisting, as well as standing more than 45 minutes.  As a result, Bremner determined that Lane could not perform the duties required in the D-line utility relief position.  On March 29, 2006, Lane's employment with Bremner was terminated.

Meanwhile, Lane had expressed interest in the job of stockroom attendant.  He states that

3

he first mentioned that he could perform the stockroom attendant job in October 2005.  The parties agree he expressed interest in the position the date he was terminated, March 29, 2006.  He also indicated he could perform the duties of a security guard or sample room associate.  There were no official openings in any of these positions on March 29.  At the time, one stockroom attendant, Gina Jones, was out on maternity leave and her position was being filled by a temporary employee.  Clark states that she spoke with one of Jones's co-workers and Jones's supervisor, who both informed Clark that Jones intended to return to work in mid-April at the end of her maternity leave.  Lane, however, states that on the evening of March 29 he learned that Jones was not returning to work.

Jones testified that in early March she told Jerry Sullenger, who worked in the human resources department under Clark, that she was going to resign.  In her deposition, Jones stated that her decision was final as of that day and Sullenger "knew no was my answer."  Sullenger testified that her impression from this conversation was that Jones had not yet decided whether or not she was going to return to work at the end of her maternity leave.  Sullenger states that she told Jones to call her when she reached a decision.  Sullenger further explained that had Jones quit in early March, Bremner would have terminated her as of that day.  Regardless, Jones was not terminated until April 7, 2006.

Jones did not speak to any other supervisors about her plans for work following her maternity leave, but she did speak with her fellow stockroom attendant Julie Lynch, now Egbert, about her conversation with Sullenger.  Jones told Egbert that she had told Sullenger she was not returning to work at Bremner.  Later, possibly on March 29, Egbert spoke with Lane and told him that Jones was not returning to work.  She also told him that she was going to move to an

4

accounting position, so her stockroom position would be vacant as well.

April 7, 2006, the date Jones was terminated, was the same date that Clark states she learned Jones was not returning to Bremner after her maternity leave.  Jones's vacant stockroom attendant position was posted on April 10, 2006.  Lane applied for the position, but it was awarded to an internal candidate.  Bremner's policy was to consider internal candidates before external candidates for job openings.

Soon thereafter, Egbert's stockroom position became available.  Because two qualified internal candidates applied for the prior opening, Bremner did not post the position and instead awarded it to the second internal candidate.

In late May 2006, Lane filed a charge with the Equal Employment Opportunity Commission ("EEOC").  On or about May 31, Clark called Lane and offered him a position as a security guard.  The position had been posted for two weeks and no internal candidates had applied.  Lane accepted the position and began work as a security guard for Bremner on June 5, 2006.  On January 15, 2007, the security guard position was eliminated.

On December 12, 2007, Lane filed a Complaint against Bremner in this Court, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. and Kentucky state law pursuant to KRS 342.197, which prohibits retaliation for filing a workers compensation claim.  Bremner has moved for summary judgment, arguing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In

determining whether summary judgment is appropriate, a court must resolve all ambiguities and

draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material

fact."  *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether

the party bearing the burden of proof has presented a jury question as to each element in the

case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a

mere scintilla of evidence in support of his position; the plaintiff must present evidence on which

the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 252 (1986)).  Mere speculation will not suffice to defeat a motion for

summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly

supported motion for summary judgment.  A genuine dispute between the parties on an issue of

material fact must exist to render summary judgment inappropriate."  *Monette v. Elec. Data Sys.*

*Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

### I.       Americans With Disabilities Act Claim

The ADA prohibits employers from discriminating "against a qualified individual on the

basis of disability in regard to job application procedures, the hiring, advancement, or discharge

of employees, employee compensation, job training, and other terms, conditions, and privileges

of employment."  42 U.S.C. § 12112(a).  A "qualified individual" under the ADA "means an

individual who, with or without reasonable accommodation, can perform the essential functions

of the employment position that such individual holds or desires." *Id.* § 12111(8).

Discrimination under the ADA includes:

> (A)  not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or
> (B)  denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant.

*Id.* § 12112(b)(5).  "Reasonable accommodation," in turn, may include:

> (B)  job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

*Id.* § 12111(9).

Lane bases his discrimination claim upon Bremner's failure to accommodate his disability.  He argues Bremner could have accommodated his disability by excusing him from relieving the caser operator while working in the D-line utility relief position or by assigning him to a stockroom position.  The Sixth Circuit has held that "claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination."  *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007).  In such instances, the claim is analyzed under the following framework:

> (1)  The plaintiff bears the burden of establishing that he or she is "disabled."
> (2)  The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a)

> without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation.
>
> (3)    The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Id.* at 869 (quoting *Hendrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004), quoting

*Monette*, 90 F.3d at 1186).

In its motion, Bremner does not contest that Lane is disabled.  Instead, Bremner argues

that Lane is not "otherwise qualified" for the positions.  Accordingly, to survive summary

judgment, it is Lane's burden to submit evidence sufficient to create a genuine issue of material

fact regarding whether he is "otherwise qualified" for either the D-line utility relief position or

the stockroom position.  If he does so, the burden shifts back to Bremner to prove relieving the

caser operator is an essential criterion of the D-line utility relief position and/or that assigning

Lane to the stockroom position would impose an undue hardship upon Bremner.

With regards to the D-line utility relief position, Lane contends he could perform the job

if he was not required to relieve the caser operator.  The Court finds that Lane has presented

enough evidence to raise a material question of fact on this point.[1]  The burden is on Bremner,

therefore, to prove that relieving the caser operator is an essential function of the D-line utility

relief position.  Bremner states that an essential function of the D-line utility relief position is to

relieve all the regular D-line workers, including the caser operator.  Bremner argues that the sole

purpose of having a relief position is to keep the production line running by filling gaps in the

---

[1] The Court notes that Lane also testified that he could not place inserts into cases, another aspect of the D-line utility relief position.

line that occur as the employee at each position goes on break or is unavailable during a shift.

An employer is not required to restructure essential functions of a job in order to accommodate a disabled employee. *Bratten v. SSI Servs, Inc.*, 185 F.2d 625, 632 (6th Cir. 1999). Furthermore, "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8).[2] While Bremner's arguments that relieving the caser operator is an essential function of the job are persuasive, the Court finds that they are not enough to satisfy its burden on summary judgment. Bremner has only asserted that function is essential but has not provided a sufficient explanation or proof as to why. At the present time, with the evidence before it, the Court is uncomfortable granting judgment as a matter of law, but this issue may be revisited at a later time.

With regards to the stockroom position, Lane asserts that he could perform the essential functions of that job. He states that former stockroom attendants think he could perform the essential duties even considering his permanent restrictions. Based on the description of the position by these employees, vocational expert Dr. Tom Wagner also testified that Lane could perform the duties of a stockroom attendant. Bremner argues that the essential functions of the stockroom position are not consistent with Lane's final permanent work restrictions. For example, Bremner has submitted evidence that the stockroom position required frequent bending and twisting, as well as pushing and pulling items weighing more than fifty pounds.

---

[2] Also, "if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). The written description of the D-line utility relief position submitted to the Court states that employees "must relieve for breaks at the caser." Lane, however, testified that this responsibility was not part of his written job description when he reported for the position.

The Court finds that Lane has submitted enough evidence to present a genuine issue of material fact and overcome summary judgment on the issue of whether he is "otherwise qualified" to perform the duties of a stockroom attendant.  The burden then is on Bremner to prove that assigning Lane a stockroom position would have been an undue hardship.

Bremner argues that it would have been an undue hardship to assign Lane to a stockroom position because there were no vacant positions until after Lane was terminated.  Reassignment to a vacant position may be required under the ADA, 42 U.S.C. § 12111(9)(B); *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 634 (6th Cir. 1999), but an employer is not required to create new jobs or "waive legitimate, non-discriminatory employment policies or displace other employees' rights in order to accommodate a disabled employee," *Hedrick v. W. Res. Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004) (citing *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 257 (6th Cir. 2000)).  Bremner maintains that as of March 29, 2006, Gina Jones had the right to return to her position at the end of her maternity leave and had not informed Bremner that she intended to resign.  By the time she did so, on April 7, 2006, Lane was terminated and internal employee applicants had preference for the stockroom positions that became available.

Lane has presented evidence that Jones informed Bremner in early March that she was not returning to her stockroom position.  Jones testified she told Sullenger, who worked in the human resources department under Clark, that she was not going to return to Bremner.  Although Sullenger testified that her impression from this conversation was that Jones had not yet decided whether or not she was going to return to work at the end of her maternity leave, and despite the fact that Jones was not terminated until April 7, 2006, the Court finds that, at least at this time, there is enough to create a genuine issue of material fact as to whether Bremner knew there was

10

a stockroom position available for Lane before terminating him.  If Bremner did know that there

was going to be at least one position available, then it may have been a reasonable

accommodation to assign Lane to that position instead of terminating him.

      In sum, the Court finds that Bremner is not entitled to summary judgment with respect to

Lane's ADA claim.

      **II.      Workers Compensation Claim**

      Lane also contends that he was discharged in retaliation for filing a workers'

compensation claim, in violation of KRS 342.197.  "Under Kentucky law, the 'minimum' burden

on a plaintiff claiming retaliation is to provide evidence [he] (1) 'engaged in statutorily protected

activity,' (2) was discharged, and (3) 'there was a connection between the protected activity and

the discharge.'" *Henderson v. Ardco, Inc.*, 247 F.3d 645, 654 (6th Cir. 2001) (quoting

*Willoughby v. GenCorp, Inc.*, 809 S.W.2d 858, 861 (Ky. Ct. App. 1990)).  "The third element of

the test requires a showing that the claim was a 'substantial and motivating factor but for which

the employee would not have been discharged.'" *Id.* (quoting *First Prop. Mgmt. v. Zarebidaki*,

867 S.W.2d 185, 188 (Ky. 1993)).  In other words, Lane has to show that his pursuit of a

workers' compensation claim was the substantial and motivating factor in his termination from

Bremner.

      The only evidence Lane suggests shows Bremner terminated him because he pursued a

workers' compensation claim is a comment made by Clark the date he was injured and a

footnote in Bremner's response letter to the EEOC.  On January 20, 2005, the date Lane hurt his

back at work, he states that he overheard Clark, while she was standing inside his emergency

room door, say to someone else that he had just come off workers comp.[3]  On January 16, 2007,

Bremner mentioned in a footnote to the EEOC that Lane's January 2005 injury represented his

tenth compensable injury during his employment with Bremner.[4]

Lane states that these comments provide some reasonable basis for believing that his

pursuit of a workers' compensation claim played a substantial role in his termination.  The Court

disagrees.  Even when resolving all ambiguities and drawing all reasonable inferences in his

favor, Lane has not presented sufficient evidence on which the trier of fact could reasonably find

for him.  Lane's argument that these two objectively inconsiderable statements indicate a broader

motivation on the part of Bremner to terminate him for pursing a workers' compensation claim is

mere speculation, at best.  The Court therefore finds Bremner is entitled to summary judgment

with respect to Lane's workers' compensation claim.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion for

Summary Judgment is GRANTED IN PART and DENIED IN PART.

---

[3] Lane had undergone shoulder surgery in 2003 and was off from work for approximately six weeks.

[4] Lane states that is was only his fourth compensable injury.